CLARENCE E. HOWLAND *vs.* UNION STREET RAILWAY COMPANY.

HUMPHREY D. HOWLAND *vs.* SAME.

Bristol.   October 25, 1889. — November 11, 1889.

Present: DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Personal Injuries — Street Railway — Due Care of Boy.*

A boy twelve and a half years old, who had been sent into the street to procure ice from a passing cart, looked up the street, and, seeing no street car approaching, walked down the street upon the track for a short distance beside such a cart, which was heavily loaded and making a good deal of noise, in an attempt to make his errand known to the driver.  While yet walking along or momentarily standing still, he was run over by a car approaching him from behind. This car was five or ten minutes late, the next car not being then due, and the driver was hurrying along to make up time, and, though shouting to the boy several times, did not attempt to stop the car until within a few feet of him. *Held*, that the question whether the boy was in the exercise of due care was for the jury.

TWO ACTIONS OF TORT.   The first case was brought by the plaintiff, a minor, for personal injuries, and the second was brought by his father, for the loss of his services, and for the expense of caring for him while he was suffering therefrom.

At the trial of both cases together in the Superior Court, before *Dunbar,* J., on the question whether the boy was in the exercise of due care at the time he was injured, there was evidence tending to show that he was about twelve and a half years old, bright and large for his age and entirely healthy, with good eyesight and hearing; that he was used to horses and to driving them, and was familiar with street cars, upon which he had frequently ridden; that on the day of the accident, which was bright and clear, he was stopping at the house

of his uncle, on the easterly side of Purchase Street in New Bedford; that he was familiar with the locality, and knew that this street, which was fifty feet in width and had a street railway track running through the middle of it, was the main travelled thoroughfare of the city; that his uncle sent him after a piece of ice, and he left the house for that purpose; that as he came out of the house he looked up the street towards the north and saw an ice cart approaching him; that at the same time he saw no street car, although he looked for one; that the cart was being driven along between the car track and the westerly sidewalk, with its nigh wheels on the westerly track; that he started towards the north diagonally across the easterly sidewalk and the street towards the approaching cart; that upon reaching a point between the car tracks and opposite the driver of the cart he turned and walked along between the tracks towards the south, keeping pace with the cart for a distance of between eighty and ninety feet; that as he walked along he shouted to the driver that he wished some ice, but the driver, although looking at him, made no response; that he shouted to the driver a second time with like result, when he noticed that the driver turned his horses to the right so as to clear the wagon-wheels from the car track; that thereupon he was struck by the horses of the street car, which approached him from behind, and was seriously injured; and that he did not hear the car before he was struck, nor did he have any warning of its approach.

The boy testified, on cross-examination, that he stood still for a few seconds while the driver was turning his horses away from the car track before the horses attached to the car hit him; that from the time when he shouted to the ice-cart driver for the second time until he was struck, fifteen to twenty seconds elapsed; that the cart had not fairly passed him when he was injured; and that when struck he was standing on one of the rails of the track. In answer to the question, " Knowing the whole use that street was put to, you stood there without looking at all for five minutes, that is, from the time you left the house, to see if any car was coming, — that is it, is it?" he said, " Yes, sir, I thought I could hear a car if it was coming."

The plaintiffs also called as a witness the driver of the ice-cart, who testified that the plaintiff at the time he was struck

was walking towards the south between the two rails of the horse-car track; that the weight of his cart and the load of ice in it was about ten tons; and that as it moved on the pavement of the street it made a great deal of noise.

The plaintiffs also introduced evidence tending to show that the car was from five to ten minutes behind time, and that the driver of the car was hurrying to meet another car; that when at some distance from the boy, the driver shouted to him, and after the car had moved about its length he shouted again; that after about the same interval of time he shouted again, and then put on the brakes; that when he shouted the third time the horses were within a few feet of the boy; and that the car was about half full of passengers, and could have been stopped in about half its length at the speed at which it was going.

The judge refused to order verdicts for the defendant, and submitted the cases to the jury.

The jury returned a verdict for the plaintiff in each case; and the defendant alleged exceptions.

*C. W. Clifford*, for the defendant.

*H. M. Knowlton*, for the plaintiffs.

C. ALLEN, J. We think the plaintiffs were entitled to have their cases submitted to the jury. The boy was in the street for a legitimate and proper purpose. The evidence would have warranted the jury in finding that he had walked upon the street railway track for not more than eighty or ninety feet, by the side of a noisy ice-cart, which might prevent him from hearing a street car approaching from behind; that if at the time of being run over he was standing still, as he himself testified, this had been but for a moment, while, if the driver of the ice-cart was correct, the boy was yet walking along; that the driver of the street car was careless; that the boy might properly rely somewhat on the driver's using greater care than he did use; and that there was no reason to expect a car along at that particular time, the car being five or ten minutes late, and another not yet due. With evidence tending to show this state of things, it was for the jury to say whether on the whole the boy exercised such care as he was bound to exercise.

*Exceptions overruled.*